# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MASONITE CORPORATION, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) Case No. 09 CV 2131 |
| | ) |
| CRAFTMASTER MANUFACTURING, INC., | ) Honorable Joan B. Gottschall |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Masonite Corporation ("Masonite") moves for leave to file a supplemental complaint under Federal Rule of Civil Procedure 15(d) and to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). For the reasons stated below, the motion is granted.

### I. BACKGROUND

In January 2009, Craftmaster Manufacturing, Inc. ("Craftmaster") sent Masonite a letter calling into doubt the validity of Masonite's D516,226 patent (the "'226 patent") given alleged errors therein. In March 2009, Masonite petitioned the United States Patent and Trademark Office ("USPTO") for Certificates of Correction for both its '226 patent and its D516,225 patent (the "'225 patent"). Nevertheless, Masonite sued Craftmaster in April 2009 to enjoin alleged infringement of the '225 and '226 patents.

The deadline for amending the pleadings was initially set for November 30, 2009, (*see* Scheduling Order, June 3, 2009, ECF No. 20), but was extended to June 30, 2010. (*See* Scheduling Order, January 28, 2010, ECF No. 41.) More than a month after the June 30 deadline passed, on August 3 and 14, 2010 respectively, the U.S. Patent and Trademark Office ("USPTO") issued Certificates of Correction for the '226 and '225 patents. On November 22,

2010, after the parties were unable to resolve their dispute at an October 7, 2010 settlement conference, Masonite sought leave to supplement its complaint with counts alleging infringement of the patents as corrected by the certificates.

## II. LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). To determine whether "just terms" exist for motions to supplement under Rule 15(d), the court uses the same factors as those used for motions to amend under 15(a). *Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Accordingly, leave to supplement the pleadings should be granted when there is no apparent reason for denying leave such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under an old version of Rule 15, plaintiffs had "sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action [had] made clear the right to relief." Fed. R. Civ. P. 15(d) advisory committee's notes (1963 Amendment). Under the current Rule 15(d), "[a]s in other situations where a supplemental pleading is offered, the court is to determine in the light of the particular circumstances whether filing should be permitted, and if so, upon what terms." *Id.*

Rule 16, on the other hand, requires "good cause" to modify a scheduling order. Fed. R. Civ. P. 16(b)(4). Good cause depends on whether the moving party, which missed the scheduling deadline, nonetheless exercised due diligence. *Caliber One Indem. Co. v. Millard*

*Chi. Window Cleaning, LLC*, No. 04 C 2424, 2005 U.S. Dist. LEXIS 9964 at *7 (N.D. Ill. May 12, 2005) (finding good cause where plaintiff filed motion to amend six months after the deadline); *see also Bridgeport Pain Control Ctr., Ltd. v. Cutera, Inc.*, No. 08-C-1116, 2009 U.S. Dist. LEXIS 15681 at *3 (N.D. Ill. Feb. 26, 2009) (recognizing "little case law on the contours of Federal Rule 16(b)(4).") If Rule 16(b) applies, the court should apply it first, followed by any appropriate Rule 15 analysis. *See Caliber One*, 2005 U.S. Dist. LEXIS 9964 at *7. Whether "good cause" exists is a matter within the court's discretion. *See United States v. One Parcel of Real Estate Located at 1948 S. Martin Luther King Drive*, 270 F.3d 1102, 1110 (7th Cir. 2001) (the standard of review on appeal for denial of leave to amend is an abuse of discretion).

### III. ANALYSIS

Craftmaster opposes Masonite's motion for leave to supplement on three grounds. Craftmaster argues that: (1) the Certificates of Correction for the '225 and '226 patents are "ineffective" in this case, (2) Masonite lacks good cause under Rule 16, and (3) even if good cause exists, Masonite has not satisfied Rule 15.

**A.    The Effect of the Certificates of Correction**

For clerical, typographical, or other mistakes of minor character, the USPTO can issue a certificate of correction. *See* 35 U.S.C. § 255 (2011) (for mistakes by the patent applicant); 35 U.S.C. § 254 (for mistakes by the USPTO). The certificate becomes part of the patent, and the patent is construed in corrected form "for causes thereafter arising." 35 U.S.C. § 255; *see also* 35 U.S.C. § 254. The Federal Circuit construed 35 U.S.C. § 254, which has the same language as § 255 regarding when it takes effect, in *Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280 (Fed. Cir. 2000). The *Southwest* patentee sought to apply retroactively its certificate of correction by construing the language, "causes thereafter arising," as including all

3

causes of action which arose after the patent's issue date. 226 F.3d at 1294. The court disagreed, holding that a certificate of correction is not "effective" for causes of action arising before the certificate issued. *Id.* at 1295. In the patent context, each act of patent infringement gives rise to a separate cause of action. *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, LLC*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) (citing *Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006)).

Craftmaster contends that the certificates of correction cannot be given effect in this lawsuit because the certificates did not issue until after the suit commenced. (*See* Craftmaster's Resp. at 11 (quoting *Southwest*, 226 F.3d at 1294) ("We hold that the certificate of correction . . . is not to be given effect in this pre-certificate lawsuit. The certificate of correction is only effective for causes of action after it was issued.").) Craftmaster argues that granting Masonite leave to supplement its original pleadings would only add causes of action based on certificates of correction that are not effective for this pre-certificate lawsuit; consequently, these causes of action which would be futile as a matter of law.

The court in *Lamoureux v. AnazaoHealth Corp.*, 669 F. Supp. 2d 227, 236 (D. Conn. 2009), considered the effect of a certificate of correction in the context of patent claim construction. There, the court noted that "the relevant inquiry for considering a certificate of correction is the date the cause of action arose rather than the date the suit was filed." *Lamoureux*, 669 F. Supp. 2d at 236 (citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 327 F. Supp. 2d 687, 700 (E.D. Tex. 2004)). The court observed that unlike in *Southwest*, its plaintiffs were suing for causes of action arising both before and after the certificate of correction issued because the plaintiffs had filed a supplemental complaint that encompassed acts of infringement

arising after the certificate issued.  *Id.*  As a result, the court read the relevant patent to include the certificate of correction for all causes of action arising after the certificate issued.  *Id.*

Not all district courts, however, agree with *Lamoureux*.  *See, e.g., Rohm, Co. v. Nichia Corp.*, No. 00-6379, 2003 U.S. Dist. LEXIS 22227 (E.D. Pa. Nov. 26, 2003); *ISCO Int'l, Inc. v. Conductus, Inc.*, No. 01-487-GMS, 2002 U.S. Dist. LEXIS 21706 (D. Del. Nov. 8, 2002).  In *Rohm*, the court denied the plaintiff's request for leave to file a supplemental pleading because it believed that granting such leave would permit an "end run" around *Southwest*.  *Rohm*, 2003 U.S. Dist. LEXIS 22227 at *8.  In doing so, the court mentioned that it was "aware of no case, and Rohm has provided none, that has permitted such a[n end-run] maneuver."  *Id.*; *but see Lamoureux*, 669 F. Supp. 2d at 236 n.12 (noting "substantial authority for allowing supplemental pleadings where the new infringement claims relate to the same technology or to new patents containing similar claims as those in the original patent" and citing six cases).

Similarly, in *ISCO*, the court characterized the plaintiff's request for leave to amend as an attempt at an end-run around *Southwest*.  *ISCO*, 2002 U.S. Dist. LEXIS 21706 at *6-7.  The *ISCO* court believed that if it granted leave to amend, the effect of the certificate of correction would "relate back" within the meaning of Fed. R. Civ. P. 15(c) to the original complaint's filing date, thereby "stripp[ing *Southwest*] of all meaning."  *Id.* at *7.

Both *Rohm* and *ISCO*, in this court's view, read *Southwest* too narrowly.  Each correctly cited *Southwest* for the proposition that a certificate of correction "is only effective for causes of action arising after it was issued."  *See Rohm*, 2003 U.S. Dist. LEXIS 22227 at *6-7 (citing *Southwest*, 266 F.3d at 1294); *ISCO*, 2002 U.S. Dist. LEXIS 21706 at *6 (citing *Southwest*, 266 F.3d at 1294).  But under *Hazelquist*, 437 F.3d at 1180, each act of infringement gives rise to a new cause of action.  Therefore, *Southwest* could accurately be read as holding that a certificate

5

of correction "is only effective for *acts of infringement occurring* after it was issued."[1] *Southwest*'s holding that the certificate of correction had no effect in a pending lawsuit must be read in light of the facts that (1) there were no supplemental claims[2] that addressed infringement of the corrected patent, and (2) the plaintiff was seeking application of the certificates retroactively to the date the uncorrected patent issued. *See Southwest*, 226 F.3d at 1287-88, 1294-95.

*Rohm*, *ISCO*, and Craftmaster have therefore read *Southwest* too broadly. Properly understood, *Southwest* holds that a certificate of correction does not affect a lawsuit where there are no counts alleging post-certificate infringement. However, as *Southwest* recognized, "for any cause of action arising after April 1, 1997, the date the certificate of correction issued, the certificate will be treated as part of the original patent." 226 F.3d at 1297. The *Southwest* court furthermore held that if one claim was invalid because of the mistake that the certificate of correction sought to address, "the invalidity ceased on April 1, 1997, when the PTO issued the certificate of correction." *Id.*

---

[1] *Hazelquist* was decided in 2006, after both *Rohm* and *ISCO*. *Hazelquist* cites to *Augustine Med. v. Progressive Dynamics*, 194 F. 3d 1367, 1371 (Fed. Cir. 1999), which cites to *AC Aukerman Co. v. RL Chaides Const. Co.*, 960 F. 2d 1020, 1031 (Fed. Cir. 1992); both *Augustine* and *AC Aukerman* were decided well before *Southwest* and clearly indicate that each act of infringement gives rise to a cause of action.

[2] The *Southwest* opinion does not expressly state that there were no supplemental pleadings. The opinion, however, gives a detailed history of the patents, counts, and arguments of the parties, and does not mention a proposed or actual supplemental pleading alleging infringement of the corrected patents only after the dates the certificates issued. *See* 226 F.3d at 1282-89. Moreover, the main point of contention in *Southwest* was whether the certificates applied retroactively to the patents' issue dates, as the plaintiff contended, or whether they applied only after the certificate issued, as the defendants contended. *Id.* at 1293-94. If there were separate allegations in the complaint directed only to infringement occurring after the certificates issued, the opinion would have addressed those counts.

Thus, in the present case, there are two applicable time periods for each corrected patent: before the certificate issued, and after. When the lawsuit was filed, Masonite's Complaint alleged only infringement of the uncorrected patents. (*See generally* Compl.) Accordingly, the certificates are not considered a part of the patent for the causes of action alleged in the initial complaint. Under the precedent and authority discussed above, this court concludes that if Masonite is allowed to supplement its pleadings to add claims directed to infringement occurring on or after the dates the certificate of correction issued, the certificates will be effective in this lawsuit as to those claims.

**B.     Rule 16**

Craftmaster argues that Masonite must satisfy a Rule 16 "good cause" analysis to support modifying the court's scheduling order, which specified June 30, 2010 as the deadline to amend the pleadings. (*See* Craftmaster's Resp. at 5.) Masonite argues in its motion that it has established good cause under Rule 16. (*See* Masonite's Mot. For Leave to Supplement at 14.) Nevertheless, Masonite technically has not missed any scheduling order deadlines because no deadline for *supplementing* the pleadings was set. (*See* Scheduling Order, January 28, 2010, ECF No. 41.) There was only a deadline for *amending* the pleadings. (*Id.*)

On one hand, it would be imprudent to allow parties to circumvent the requirements of a scheduling order merely by couching motions to amend as motions to supplement. On the other hand, supplemental pleadings under Rule 15(d) are only permitted when a "transaction, occurrence, or event . . . happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A party will therefore have to establish good cause under Rule 16 if it seeks to amend the pleadings after the deadline, but it remains unclear whether a party must establish

7

good cause if the transaction, occurrence, or event giving rise to the motion for leave to supplement occurred after the deadline to amend the pleadings.

The court declines to resolve this ambiguity because under *Glatt*, 87 F.3d at 194, and *Foman*, 371 U.S. at 182, the court should consider, *inter alia*, undue delay and the failure to cure deficiencies in previous amendments when considering motions to amend or to supplement under Rules 15(a) and 15(d). Undue delay and failure to cure deficiencies both implicate concerns about diligence, the primary factor considered in a Rule 16(b)(4) good cause analysis. *Caliber One*, 2005 U.S. Dist. LEXIS 9964 at *7. Consequently, and even though Rule 16's good cause is a higher bar for the movant than the Rule 15 standard, the court will assess the Rule 15 and Rule 16 factors concurrently, below.

**C.      Rule 15**

Under Rule 15, the court should grant leave to amend or supplement unless there are reasons for denying leave such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment. Craftmaster contends that Masonite delayed, and was therefore not diligent, when it filed its motion for leave to supplement. In support, Craftmaster points out that Masonite filed its petitions to correct the '225 and '226 patents before filing the complaint in this lawsuit, failed to apprise the court of the pending petitions, and even after they issued on August 3 and 24, 2010, waited about three months before filing this motion. For its part, Masonite argues that its diligence should be evaluated from the time the certificates issued, or even more appropriately, from the time the settlement conference failed, on October 7, 2010 – only six weeks before their motion was filed.

Craftmaster also argues that it will be prejudiced if the court allows Masonite to supplement its pleadings. Craftmaster claims that it has expended significant "time, money, and resources" in this case, and more will be required if the case continues with additional claims. Among other things, Craftmaster claims it would have to file a new round of dispositive motions if the supplemental complaint is allowed.

In the end, the court concludes that Masonite's delay does not rise to the level of being "undue" when considered in connection with the present status of this case. Discovery was stayed pending the settlement conference, and the parties have conducted only limited discovery so far. No trial date has been set, and the parties have not submitted expert reports or taken depositions; discovery is still open, so there is further opportunity to conduct written discovery if necessary.

Moreover, the certificates did not issue until after the deadline to amend the pleadings passed. It would not have been possible for Masonite to allege infringement of a corrected patent before the correction had been made. Situations like this fall within the explicit terms of Rule 15(d). *See* Fed. R. Civ. P. 15(d) (addressing situations where a "transaction, occurrence, or event . . . happened after the date of the [original] pleading.").

Ultimately, judicial economy weighs in favor of granting Masonite leave to supplement. As Masonite points out in its brief, if denied leave to supplement it could simply file a new complaint, thereby burdening the court (and Craftmaster) with an entirely new lawsuit. The new suit would involve the same parties, same patents, same types of claims, and same accused products. If Masonite is forced to file a second lawsuit, Craftmaster will perform essentially the same work and expend the same resources defending the corrected patent claims regardless of whether those claims arise in this lawsuit or one subsequently filed.

As a result, if Rule 16 applies and the scheduling order requires modification, Masonite has demonstrated "good cause." The circumstances present "just terms" supporting leave to file a supplemental pleading under Rule 15(d).

## IV. CONCLUSION

For the reasons stated above:

Masonite's motion for leave to supplement its First Amended Complaint is GRANTED. Masonite may file its proposed supplemental pleading, but in light of the court's March 29, 2011 grant of Craftmaster's motion for partial summary judgment because the uncorrected '225 and '226 patents are invalid for nonenablement and indefiniteness under 35 U.S.C. § 112, (*see* Minute Order, ECF No. 107), Masonite shall remove proposed Counts I and II, which complain of infringement of the uncorrected '225 and '226 patents.

ENTER:

                                                /s/
                                      JOAN B. GOTTSCHALL
                                      United States District Judge

DATED: April 29, 2011